**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                  No. 96-4524

MICHAEL SHONUKAN,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Peter J. Messitte, District Judge.
(CR-95-198-PJM)

Submitted: March 10, 1998

Decided: March 23, 1998

Before MURNAGHAN, NIEMEYER, and MOTZ, Circuit Judges.

_____

Affirmed in part and dismissed in part by unpublished per curiam
opinion.

_____

**COUNSEL**

James K. Bredar, Federal Public Defender, Steven F. Reich, Assistant
Federal Public Defender, Greenbelt, Maryland, for Appellant. Lynne
A. Battaglia, United States Attorney, Jan Paul Miller, Assistant
United States Attorney, Stephen S. Zimmermann, Assistant United
States Attorney, Greenbelt, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Michael A. Shonukan appeals his conviction for conspiracy to traffic in unauthorized access devices, in violation of 18 U.S.C.A. § 1029(b)(2) (West Supp. 1997); and bank fraud, in violation of 18 U.S.C.A. § 1344 (West Supp. 1997). After reviewing his claims, we affirm his conviction.

I

In May 1995, Michael Shonukan and two codefendants, Hakeem Salu and Victor Nwandu, were charged in a multi-count indictment. Count one charged all three men with conspiracy to traffic in unauthorized access devices, using and trafficking in counterfeit access devices, possession of fifteen or more unauthorized devices, and possession of device-making equipment, in violation of 18 U.S.C. § 1029(b)(2). Count two charged Shonukan with defrauding Chevy Chase Federal Savings Bank by causing the bank to honor an $1800 check in another man's name, in violation of 18 U.S.C. § 1344. Salu and Nwandu were named in four other counts, and pled guilty before trial.

The conspiracy allegedly ran from December 1993 to March 1995. The conspirators obtained and used unauthorized access devices, including credit cards and convenience checks drawn on unauthorized credit card accounts. They also shared stolen financial information among themselves, using it to open fraudulent accounts, often with their own phone numbers and mailing addresses.

The Government introduced a number of exhibits found in searches of Shonukan's residence, car, and person, including a variety of bank records, credit card receipts, and a quantity of correspondence from banks, all to various names at the address where Shonukan lived

2

alone. Also found were a number of payroll receipts that had been tampered with to show different employers, dates and names. A notebook containing names and the type of information needed to open credit card accounts--such as date of birth and mother's maiden name --was found by police during Shonukan's arrest. An address book seized from Salu's residence contained seven accounts in the name of Philip Soucy, two of which used Shonukan's address, and two accounts in the name of Dwight Frush. Further evidence established that Shonukan and Salu shared account information and convenience checks. For example, a $4000 convenience check in the name of Philip Soucy from an account identified from evidence in Salu's apartment was deposited by Shonukan in his personal checking account. Six convenience checks were drawn on fraudulent accounts in the name of Dwight Frush, accounts opened under a name found in Shonukan's notebook and with Shonukan's address and phone number. The jury convicted Shonukan on both conspiracy to traffic in unauthorized access devices and bank fraud. Shonukan was sentenced to thirty months imprisonment and four years of supervised release.

II

Shonukan claims that his Fifth and Sixth Amendment rights were violated because the indictment charged a single conspiracy among the three codefendants but the evidence at trial established multiple, separate conspiracies. He also challenges the district court's refusal to include a multiple conspiracy jury instruction and to allow counsel for Shonukan to argue the multiple conspiracy theory. We conclude that these claims lack merit.

"A variance occurs when the evidence at trial establishes facts materially different from those alleged in the indictment." United States v. Ford, 88 F.3d 1350, 1360 (4th Cir. 1996), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3369 (U.S., Nov. 18, 1996) (No. 96-6379). In a conspiracy prosecution, a defendant can establish a material variance by showing that the indictment alleged a single conspiracy but the government's proof established multiple, separate conspiracies. United States v. Kennedy, 32 F.3d 876, 883 (4th Cir. 1994). This is grounds for reversal only if the appellant demonstrates that the variance infringed his substantial rights, resulting in actual prejudice. Id.

3

The question whether a variance exists is one of law, which we review de novo. United States v. Williamson, 53 F.3d 1500, 1512 (10th Cir. 1995).

Shonukan bases his argument for a material variance on the following facts: Salu and Nwandu pled guilty prior to trial. Nwandu's role in the conspiracy had been to recode the numbers on the backs of credit cards, thereby creating counterfeit access devices. Due to the guilty pleas of Shonukan's codefendants, the Government's evidence at trial was tailored to prove the unauthorized access aspect of the conspiracy, as defined in § 1029(a)(2), with no evidence regarding counterfeiting, which is covered in § 1029(a)(1). However, a conspiracy can have more than one objective, and proof that a defendant agreed to participate in at least one objective is sufficient for conviction. See United States v. Reyes, 930 F.2d 310, 312 (3d Cir. 1991); United States v. Bucey, 876 F.2d 1297, 1312 (7th Cir. 1989). The Government did not introduce evidence regarding the counterfeit access device aspect of the case, but introduced substantial evidence regarding Shonukan's participation with Salu to use unauthorized access devices.

We conclude that there was no material variance between the indictment and the proof offered at trial. There was no proof of multiple conspiracies at trial, but of one aspect of the single conspiracy alleged in the indictment. Therefore, Shonukan's claim of Fifth and Sixth Amendment violations fails. Because the evidence did not justify introduction of an instruction on multiple conspiracies, the district court did not abuse its discretion in refusing to give a jury instruction on the issue. See United States v. Burgos, 55 F.3d 933, 935 (4th Cir. 1995) (holding grant or denial of a requested instruction reviewed for abuse of discretion). Nor was the district court's ruling that counsel for Shonukan could not argue multiple conspiracies in closing argument an abuse of direction. See Herring v. New York, 422 U.S. 853, 862 (1975) (district court is accorded wide latitude in controlling closing argument).

Shonukan also seeks to challenge his sentence, asserting that the amount of loss calculation under the sentencing guidelines was erroneous. Because Shonukan has completed serving his sentence and has been released by the Bureau of Prisons, this claim is dismissed as

4

moot. <u>Lane v. Williams</u>, 455 U.S. 624, 632 (1982). We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED IN PART; DISMISSED IN PART</u>

5